**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| VANESSA FERRANTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-12462-JEK |
| | ) | |
| GENESYS CLOUD SERVICES, INC., | ) | |
| ELCENORA MARTINEZ, and | ) | |
| CHARLES QUINCY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANT CHARLES QUINCY'S MOTION TO DISMISS**

**KOBICK, J.**

Plaintiff Vanessa Ferranto was an employee of defendant Genesys Cloud Services, Inc. for several years. She claims that Genesys and two of her former supervisors—defendants Charles Quincy and Elcenora Martinez—discriminated against her based on her sex by taking various adverse employment actions against her leading up to, throughout, and upon her return from maternity leave. Ferranto asserts claims of discrimination, retaliation, and aiding and abetting of discrimination under M.G.L. c. 151B, as well as a claim of wrongful termination, against all three defendants. Genesys and Martinez filed answers to the complaint, but Quincy has moved to dismiss for failure to state a claim. That motion will be denied, as each of Ferranto's claims against Quincy is plausibly alleged.

## BACKGROUND

The following facts, which are assumed true on a motion to dismiss, are drawn from the complaint and documents fairly incorporated by reference in that complaint. *See Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 15 (1st Cir. 2024).[1]

Ferranto was employed by Genesys as a Senior Director of Product Management, Journey Management from December 2021 through October 2024. ECF 1-1, ¶¶ 2, 9. She joined Genesys after it acquired her prior employer, Pointillist, Inc., where she had worked as the Senior Director of Product. *Id.* ¶¶ 7-9. At Genesys, Ferranto reported to Will Thiel, who gave her positive performance reviews. *Id.* ¶ 13. In 2022 and 2023, she earned between $200,000 and $232,100 per year. *Id.* ¶¶ 11-12, 14. In February 2023, she received a 100% bonus and a merit-based salary increase of approximately 5.5%, and in May 2023, she received an equity grant that was awarded to select employees based on performance. *See id.* ¶¶ 12, 14-16. She also began discussions in January 2023 about a promotion to a Vice President position. *Id.* ¶¶ 17, 20.

In July 2023, Ferranto's direct manager changed from Thiel to Martinez. *Id.* ¶ 21. Two months later, on September 14, 2023, Ferranto disclosed to Martinez that she was pregnant. *Id.* ¶ 22. In the weeks that followed, Ferranto was excluded from project discussions and work events. *Id.* ¶¶ 24, 26. She also began receiving professional criticism from Martinez, including in a December 2023 performance review, which did not mention Ferranto's Vice President promotion path. *Id.* ¶¶ 25, 29; ECF 16-3. Soon after, Martinez refused to review the "Growth Plan" Ferranto

---

[1] The Court will not consider the affidavit submitted by Quincy in support of his motion to dismiss. ECF 16-5. Because Ferranto's performance reviews and Performance Improvement Plan are fairly incorporated into the complaint through allegations referencing them, *see* ECF 1-1, ¶¶ 13, 29, 31, 47, the Court will consider those documents to the extent they bear on Quincy's motion, *see* ECF 16-2, 16-3, 16-4.

had proposed to address Martinez's feedback. ECF 1-1, ¶ 30. In February 2024, Ferranto received only a 90% bonus and a merit-based salary increase of approximately 2.5%. *See id.* ¶¶ 14, 31.

In March 2024, Ferranto completed her "Maternity Plan" documentation. *Id.* ¶ 36. That same month, Genesys posted a job opening for a role titled "Senior Director of Product Management, Journey Management & Insights." *Id.* ¶ 38. The posted title was nearly identical to Ferranto's job title—"Senior Director of Product Management, Journey Management"—and advertised a comparable salary range and responsibilities. *Id.* On April 5, Ferranto gave birth to her child and began her maternity leave. *Id.* ¶ 39. Ten days later, Quincy was hired into the "Senior Director of Product Management, Journey Management & Insights" role, "effectively replac[ing]" Ferranto. *Id.* ¶¶ 40, 41.

On August 13, 2024, while Ferranto was still on maternity leave, Quincy informed her that she was being demoted from her Senior Director of Product Management job to an "individual contributor role." *Id.* ¶¶ 42, 44. Six days later, Ferranto's legal counsel sent correspondence to Genesys regarding its allegedly "unlawful and discriminatory treatment of Ferranto after she disclosed her pregnancy and during her [maternity] leave." *Id.* ¶ 43. Ferranto returned to work on August 26 under the supervision of both Quincy and Martinez. *Id.* ¶¶ 3-4, 44. Upon her return, she met with Martinez, who reiterated claims of Ferranto's "poor leadership" when discussing the reasons for hiring Quincy. *Id.* ¶ 44. Ferranto then learned from a former direct report that Martinez and Quincy "frequently scapegoated" her during her maternity leave. *Id.* ¶ 45. On August 29, three days after Ferranto returned from leave, Martinez informed Ferranto that she was "no longer a leadership team member," that she was "creating discomfort among the team," and that "her performance would be addressed." *Id.* ¶ 46.

On September 19, 2024, Quincy and Martinez formally placed Ferranto on a Performance Improvement Plan ("PIP"). *Id.* ¶¶ 47, 86; *see* ECF 16-4. For the next two weeks, she was excluded from her own team's presentations. *Id.* ¶ 50. On September 25, Ferranto provided her formal response (also known as a "rebuttal") to being placed on a PIP. *Id.* ¶ 51. In it, she outlined the "many successes" that she "ha[d] enjoyed" at Genesys and stated that "the generalized criticisms" of her performance began only after she disclosed her pregnancy and anticipated leave of absence. *Id.* ¶¶ 52-53. Ferranto's response further alleged sex and pregnancy discrimination and retaliation. *Id.* ¶ 53. Ferranto concluded her response by stating her intent to "follow the action plan and work towards the desired outcomes stated in the PIP," and to perform her "job duties consistent with the expectations described." *Id.*

Meanwhile, in September and October 2024—shortly after receiving her PIP—Ferranto was contacted multiple times by a different Genesys colleague about potentially joining his team. *Id.* ¶¶ 49, 55. On October 22, Ferranto requested a final decision on the PIP from Martinez and Quincy and received a vague timeline in response. *Id.* ¶¶ 58-59. The next day, Ferranto was informed of a "legal blocker" that prevented her transfer to her colleague's team. *Id.* ¶ 60. On October 25, Martinez fired her, less than two months after her return from maternity leave and one month after the submission of her rebuttal to the PIP. *Id.* ¶¶ 61, 78.

Ferranto filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") on November 5, 2024. *Id.* ¶ 63. After withdrawing her charge with MCAD on March 14, 2025, she initiated this action in Middlesex Superior Court on June 20, 2025. *Id.* ¶ 64. Against Genesys, Martinez, and Quincy, she asserts claims under M.G.L. c. 151B, § 4 of

sex discrimination (Count I),[2] retaliation (Count II), and aiding and abetting (Count III), as well as a claim of wrongful termination (Count IV). *Id.* ¶¶ 66-112. Genesys and Martinez removed the case to this Court and filed their answers. *See* ECF 1, 7, 8.[3] After Quincy moved to dismiss Ferranto's claims against him for failure to state a claim, ECF 15, and Ferranto opposed that motion, ECF 17, the Court held a hearing and took the motion under advisement.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quotation marks omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

---

[2] Count I, labeled "Sex/Pregnancy Discrimination," alleges a theory of sex discrimination based on conduct that occurred both during and after her pregnancy. While allegations of pregnancy-based discrimination are included in her complaint, Ferranto's claim is that she was subjected to discrimination based on her sex, including while she was on maternity leave and upon her return to work.

[3] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, and there is complete diversity between the parties: Ferranto is a citizen of Massachusetts, while Martinez is a citizen of Virginia, Quincy is a citizen of North Carolina, and Genesys is incorporated and has its principal place of business in California. ECF 1, ¶¶ 8-12, 17-19; ECF 2.

**DISCUSSION**

## I.        Sex Discrimination Claim.

Count I asserts that Quincy discriminated against Ferranto based on her sex in violation of M.G.L. c. 151B, § 4(1). That provision makes it unlawful "[f]or an employer, by himself or his agent . . . to discharge from employment . . . or to discriminate against [an] individual in compensation or in terms, conditions or privileges of employment" "because of" that individual's sex or pregnancy. M.G.L. c. 151B, § 4(1). Quincy does not argue that, as an individual supervisor rather than Ferranto's employer, he may not be subject to a sex discrimination claim under M.G.L. c. 151B, § 4(1). *See Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 474 Mass. 382, 396 (2016) (explaining that supervisors may be held liable under M.G.L. c. 151B, §§ 4(4A) and 4(5) for interfering with another's rights protected under Chapter 151B and aiding and abetting discrimination forbidden by the chapter). The Court will therefore proceed, as does Quincy, on the assumption that he may be subject to liability under M.G.L. c. 151B, § 4(1).

To prevail on a sex discrimination claim under Chapter 151B, a plaintiff must establish that (1) she "is a member of a protected class; (2) she "was subject to an adverse employment action"; (3) the defendant "bore 'discriminatory animus' in taking that action"; and (4) "that animus was the reason for the action (causation)." *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 680 (2016). Because plaintiffs often lack direct evidence of discriminatory animus and causation, they may, as does Ferranto here, proceed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Verdrager*, 474 Mass. at 396. Under the first step of that framework, the plaintiff must make a prima facie showing of discrimination by alleging that "(1) she is a member of a class protected by G.L. c. 151B; (2) she performed her job at an acceptable level; and (3) she was terminated or otherwise subjected to an adverse

6

employment action." *Id.* (citation modified). A plaintiff need not, however, establish a prima facie case in order to survive a motion to dismiss. Instead, at the pleading stage, the prima facie elements "are part of the background against which a plausibility determination should be made." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013). All Ferranto must do to survive Quincy's motion is "plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial." *Id.*; *see Llorens v. LexShares, Inc.*, 759 F. Supp. 3d 181, 187 (D. Mass. 2024).

There is no dispute that Ferranto, as a woman, is a member of a protected class and that she performed her job at an acceptable level.[4] Nor is there any dispute that Quincy subjected her to adverse employment actions when he demoted her from her job as Senior Director of Product Management, Journey Management while she was on maternity leave and then placed her on a PIP within three weeks of her return to the office. Instead, Quincy argues that Ferranto does not plausibly allege that he possessed discriminatory animus toward her. But a plaintiff need not have direct evidence of discriminatory animus to survive a motion to dismiss, particularly where, as here, she is proceeding under the *McDonnell Douglas* framework. And Quincy does not meaningfully contest that Ferranto has plausibly alleged a prima facie case of sex discrimination under that framework. But even if Ferranto did have a burden to plausibly allege discriminatory animus on the basis of sex, she has easily crossed the plausibility threshold on that element. According to the complaint, Ferranto, a female employee with leadership responsibilities and years of tenure at Genesys, disclosed her pregnancy to her supervisor, gave birth, and went on maternity leave in accordance with company policy. ECF 1-1, ¶¶ 7-9, 22, 36, 39. Just two weeks before she

---

[4] Although Quincy contends that Ferranto "was not part of the protected class of pregnant people" when she worked with him, he does not dispute that, as a woman, she was a member of the class of people protected against sex discrimination. ECF 16, at 13.

was slated to return to work, Quincy—her new supervisor—having never met her but knowing she was on maternity leave, demoted her from her job as Senior Director of Product Management, Journey Management to an individual contributor role. *Id.* ¶¶ 38, 40-42, 75. Then, within three weeks of her return, he had placed her on a PIP. *Id.* ¶¶ 47, 86; ECF 16-4, at 2. These allegations give rise to a plausible inference that Quincy demoted Ferranto and placed her on a PIP because of her sex.[5] Ferranto's claim of sex discrimination against Quincy will not be dismissed.

## II.   Retaliation Claim.

Count II claims that Quincy retaliated against Ferranto by placing her on a PIP and later terminating her because, through counsel, she sent a letter to Genesys concerning its alleged "unlawful and discriminatory treatment of [her] after she disclosed her pregnancy and during her pregnancy leave." ECF 1-1, ¶¶ 43, 85-87. Chapter 151B forbids "any person . . . to discharge, expel, or otherwise discriminate against any person because [she] has opposed any practices forbidden" under the statute. M.G.L. c. 151B, § 4(4). Absent direct evidence of a retaliatory motive, a plaintiff may make out a prima facie case of retaliation by plausibly alleging that she "engaged in protected conduct, that [s]he suffered some adverse action, and that 'a causal connection existed between the protected conduct and the adverse action.'" *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 707 (2011) (quoting *Mole v. Univ. of Mass.*, 442 Mass. 582, 591-92 (2004)).

Quincy does not dispute that Ferranto engaged in protected conduct by, on August 19, 2024, sending the letter to Genesys objecting to its alleged discriminatory treatment of her. Nor

---

[5] Ferranto alleges other adverse employment actions, including being blocked from transferring to a different team, being taken off a promotion track, and ultimately being terminated. ECF 1-1, ¶¶ 75-78. Although Quincy contests whether Ferranto plausibly alleged his involvement in those actions and their causal connection to her sex, the Court need not reach those issues as they relate to Count I because Ferranto has plausibly alleged that Quincy violated Chapter 151B, § 4(1) by demoting her and placing her on a PIP based on her sex.

does he dispute that she experienced adverse actions when she was placed on a PIP on September 19, 2024 and then terminated from Genesys on October 25, 2024. Rather, Quincy contends that Ferranto has failed to plausibly allege the necessary causal connection between her letter and the alleged adverse actions, because she does not specifically allege that he had knowledge of the letter. Ferranto counters that, because Quincy supervised her, this Court can, and should, infer that he knew about the letter based on "temporal proximity and employer structure." ECF 17, at 5.

Ferranto has the better argument. At the pleading stage, Ferranto's factual allegations need only give rise to a plausible inference that Quincy had knowledge of the letter. And that plausible inference can be drawn from the fact that Quincy was a member of the Genesys management team and one of Ferranto's two direct supervisors at the time of the adverse actions, and that the adverse actions followed so closely on the heels of Ferranto's protected conduct.[6] Ferranto is unlikely, at this early stage in the litigation, to have ready access to information about whether Quincy in fact knew of her letter. In light of Quincy's plausible knowledge and the one-month gap between the letter and the issuance of the PIP, Ferranto has sufficiently alleged that he retaliated against her because of her protected conduct. *See Ciccarelli v. Sch. Dep't of Lowell*, 70 Mass. App. Ct. 787, 794 (2007) ("'Close temporal proximity between the protected activity and the adverse employment action permits an inference of the causal nexus necessary for a finding of retaliation.'" (quoting *Ritchie v. Dep't of State Police*, 60 Mass. App. Ct. 655, 666 (2004))).

III.    **Aiding and Abetting Claim.**

Count III alleges that Quincy aided and abetted acts forbidden under Chapter 151B in violation of M.G.L. c. 151B, § 4(5). This claim, as Ferranto acknowledged at the hearing, is an

---

[6] Quincy relies on his affidavit to dispute his knowledge of Ferranto's August 19, 2024 letter, but the affidavit may not be considered on a motion to dismiss without converting it into a motion for summary judgment.

alternative theory of liability as to Quincy.[7] To prevail on a claim of aiding and abetting under Chapter 151B, a plaintiff must establish that the defendant (1) "committed a wholly individual and distinct wrong . . . separate and distinct from the claim in main"; (2) "shared an intent to discriminate not unlike that of the alleged principal offender"; and (3) "knew of his or her supporting role in an enterprise designed to deprive [the plaintiff] of a right guaranteed him or her under G.L. c. 151B." *Lopez v. Commonwealth*, 463 Mass. 696, 713 (2012) (quotation marks omitted). The "claims in main" that Quincy allegedly aided and abetted are Ferranto's claims for discriminatory termination and retaliation against Genesys and Martinez. *See* ECF 1, ¶ 92; *Lopez*, 463 Mass. at 713 ("An aiding and abetting claim under § 4(5)" is "entirely derivative of the discrimination claim." (quotation marks omitted)).

Quincy contends that the allegations directed against him are insufficient to constitute a "wholly individual and distinct wrong" separate from any alleged acts of discrimination or retaliation by Genesys or Martinez. *Lopez*, 463 Mass. at 713. But Ferranto has, at a minimum, sufficiently alleged that Quincy committed the distinct wrong of demoting Ferranto.[8] *Compare Sheldon v. F.W. Webb Co.*, 801 F. Supp. 3d 59, 73 (D. Mass. 2025) (allegations that two supervisors, individually and together, engaged in retaliatory conduct against plaintiff were sufficient to constitute distinct wrongs from claim in main against employer), *with Llorens*, 759 F. Supp. 3d at 189 (no distinct wrongs alleged against individual board members where allegations

---

[7] Ferranto relies on many of the same allegations to support her aiding and abetting claim and her discrimination and retaliation claims. *See, e.g.*, ECF 1-1, ¶¶ 75-77, 79, 86. At this stage in the case, Ferranto may assert alternative theories of liability against Quincy.

[8] Ferranto argues that Quincy engaged in other distinct wrongs when he placed her on a PIP, "replaced [her]," "scapegoated her," and "participated in the termination process." ECF 17, at 6. Her complaint also alleges that the defendants failed to take remedial action against her discrimination. ECF 1-1, ¶¶ 95-99. Because the allegations concerning Ferranto's demotion are sufficient to satisfy the first element of an aiding and abetting claim, the Court does not reach the issue of whether these other actions constitute distinct wrongs.

concerned decisions made by the Board as a whole and the only individual allegations failed to give rise to inference of intent to discriminate). Should judgment enter in Quincy's favor on the discrimination and retaliation claims against him later in this litigation, that act could constitute a distinct wrong that aided and abetted discrimination or retaliation by Genesys or Martinez. Although Quincy resists this conclusion, he does not offer case law or reasoned argument to support the contention that his demotion of Ferranto does not plausibly qualify as a distinct wrong under Chapter 151B. *See* ECF 16, at 15-17; ECF 21, at 6-7. And Quincy's precise role in the series of events alleged in the complaint is a factual matter that should be addressed during discovery.

Quincy alternatively argues that Ferranto's aiding and abetting claim fails because she does not plausibly allege that he harbored discriminatory intent against her or that he knew of his supporting role in a scheme to discriminate or retaliate against her. Neither argument stands up. This Court has already determined that Ferranto's complaint does plausibly allege that Quincy intended to discriminate against her on the basis of sex. And the complaint, as a whole, plausibly alleges that Quincy was, or should have been, aware of his role in an enterprise to discriminate or retaliate against Ferranto. Again, the first action that Quincy took as Ferranto's new supervisor—before he even met her—was to demote her while she was on maternity leave. And in the two months following her return from leave, she experienced a series of rapid-fire events—exclusion from team meetings, a PIP, a blocked transfer to another team, and a termination—that would have plausibly put any supervisor on notice of a discriminatory or retaliatory enterprise. Ferranto's aiding and abetting claim will not, accordingly, be dismissed.

## IV.    <u>Wrongful Termination Claim.</u>

Count IV asserts that Quincy wrongfully terminated Ferranto for submitting a rebuttal following her placement on the PIP. In general, under Massachusetts law, "employment at will can

be terminated for any reason or for no reason." *Meehan v. Medical Info. Tech., Inc.*, 488 Mass. 730, 732 (2021) (quotation marks omitted). "Massachusetts courts have, however, recognized limited exceptions to the general rule when employment is terminated contrary to a well-defined public policy." *Id.* (quotation marks omitted). In *Meehan*, the Supreme Judicial Court held that termination from employment for exercising the statutory right of rebuttal provided in M.G.L. c. 149, § 52C is one such exception. *See id.* at 735.

As relevant here, Chapter 149 requires employers to maintain a personnel record for each of their employees and to document in that record, among other things, employee evaluation documents and written warnings of substandard performance. *See* M.G.L. c. 149, § 52C. If an employee disagrees with any information contained in their personnel record, Chapter 149 confers upon them a right to "submit a written statement explaining the employee's position." *Id.* This right, known as a statutory right of rebuttal, is a legally guaranteed right of employment. *Meehan*, 488 Mass. at 735. Employees who believe they have been terminated for exercising their statutory right to file a rebuttal may, accordingly, bring a wrongful termination claim under Massachusetts' public policy exception to the at-will employment doctrine. *Id.* at 735-37.

Acknowledging that plaintiffs can generally assert Chapter 151B claims and so-called *Meehan* wrongful termination claims simultaneously, Quincy nonetheless insists that where, as here, the substance of the plaintiff's rebuttal evokes harms for which Chapter 151B provides a remedy, the *Meehan* exception is inapplicable. This is so, he asserts, because the public policy exception to the at-will employment rule "does not apply where the Legislature has also prescribed a statutory remedy," which, in Quincy's view, it has done through the remedial scheme in Chapter 151B. ECF 16, at 18 (quotation marks omitted); *see Melley v. Gillette Corp.*, 19 Mass. App. Ct. 511, 513 (1985) (where there already exists a "comprehensive remedial statute, the creation of a

new common law action based on the public policy expressed in that statute would interfere with that remedial scheme"). Quincy contends that because Ferranto's rebuttal to her PIP mentioned sex discrimination and retaliation—harms within the scope of Chapter 151B's remedial scheme—she may not invoke the *Meehan* public policy exception to claim that she was wrongfully terminated for filing that rebuttal.

The Court does not need to decide whether a plaintiff can simultaneously press a Chapter 151B claim and a *Meehan* wrongful termination claim based on a rebuttal that solely describes harms covered by Chapter 151B's remedial scheme. That is because, as alleged, Ferranto's rebuttal addressed topics other than the alleged discriminatory treatment and retaliation. Her rebuttal also "outlined [her] many successes" as a member of the Genesys leadership team, discussed her "product management leadership skills," and expressed her commitment to performing her job responsibilities "consistent with the expectation[s] described in the PIP." ECF 1-1, ¶¶ 105-06. Where, as here, a rebuttal addresses matters other than the discrimination and retaliation covered by Chapter 151B's comprehensive remedial scheme, a plaintiff may allege that, in violation of public policy, she was wrongfully terminated for exercising her statutory right to file a rebuttal. Put otherwise, a plaintiff does not lose a claim that she has been wrongfully terminated for filing a rebuttal simply because she included allegations of discrimination or retaliation in that rebuttal. Accordingly, Ferranto has plausibly alleged a *Meehan* wrongful termination claim independent of her Chapter 151B claims, and that wrongful termination claim will not be dismissed.

## CONCLUSION

For the foregoing reasons, Quincy's motion to dismiss, ECF 15, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: April 16, 2026                           UNITED STATES DISTRICT JUDGE